**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Makyah O., | ) |
| | ) |
|         Plaintiff, | ) |
| | )   Case No.: 25-cv-50347 |
|     v. | ) |
| | )   Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|         Defendant. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Makyah O., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## BACKGROUND

### A.      Procedural History

On March 2, 2022, Makyah O. ("Plaintiff") filed an application for child's insurance benefits based on disability based on his parent's record and an application for supplemental security income. R. 20. In both applications, Plaintiff alleged disability beginning December 11, 2021.[1] *Id.* The Social Security Administration denied his applications initially on October 31, 2022, and upon reconsideration on July 18, 2023. *Id.* Plaintiff filed a written request for a hearing and on February 23, 2024, a telephonic hearing was held by Administrative Law Judge ("ALJ") Kevin Vodak where Plaintiff appeared, testified, and was represented by counsel. *Id.* Thomas Dunleavy, an impartial vocational expert ("VE"), and Plaintiff's aunt also appeared and testified. *Id.*

### B.  The ALJ's Decision

In his ruling, the ALJ acknowledged the Social Security Administration's regulations governing payments of disabled child's insurance benefits if the claimant is 18 years old or older but has a disability that began before attaining the age of 22. R. 21 (citing 20 C.F.R. 404.350(a)(5)). Prior to applying the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act (20 C.F.R. § 404.1520(a)), the ALJ determined that Plaintiff was born on December 12, 2003 (making him 20 years of age at the time of the ALJ's decision)

---

[1] Plaintiff initially alleged disability beginning on December 12, 2019, but amended that to December 11, 2021, his eighteenth birthday. R. 20.

but had not yet attained the age of 22 as of December 11, 2021, the alleged onset date. R. 23. Then, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 11, 2021. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, autism spectrum disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.* The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.*

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember, and carry out simple instructions for simple, routine, and repetitive tasks; cannot meet hourly production requirements but can meet end of day goals; can make simple work-related decisions; can frequently interact with supervisors; can occasionally interact with coworkers; can never interact with the public for required job duties but can be exposed to incidental contact; cannot perform team or tandem tasks; and can be exposed to no more than occasional changes in the job setting. R. 25.

At step four, the ALJ found Plaintiff did not have past relevant work experience. R. 31. The ALJ also found that transferability of job skills was not an issue because Plaintiff did not have past relevant work. R. 31-32. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including housekeeping cleaner, laundry laborer, and cleaner II. R. 32. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since December 11, 2021, the amended onset date, through May 14, 2024, the date of the decision. *Id.*

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). " Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (citation modified) (quoting *Biestek*, 587 U.S. at 103). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess

the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) offering a perfunctory analysis in assessing listing 12.06; (2) improperly assessing his subjective symptoms; and (3) failing to develop the record by omitting his prior claim file. The Court finds that the ALJ offered more than a perfunctory analysis of listing 12.06 and that his subjective symptom analysis was not patently wrong. In light of these findings and Plaintiff's waiver of any argument pertaining to the third issue regarding the record, the Court affirms the Commissioner's decision.

### Analysis of Listing 12.06

Plaintiff contends that the ALJ's analysis of whether he met the paragraph C criteria for listing 12.06 was unsupported and failed to address favorable evidence. The Court finds no error as to this issue because the ALJ offered more than a perfunctory analysis and provided a sufficient rationale.

A claimant is considered presumptively disabled and eligible for benefits if he has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). To demonstrate presumptive disability under listing 12.06 (anxiety and obsessive-compulsive disorders), a claimant must satisfy the paragraph A criteria in addition to satisfying either the paragraph B or C criteria as set forth in the listing. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.06. To satisfy the paragraph C criteria under listing 12.06, a claimant must have a medically documented history of the existence of a "serious and persistent" mental impairment over a period of at least two years. *Id.* In addition, a claimant must satisfy what is referred to as the C1 and C2 criteria. The C1 criterion is satisfied with evidence of reliance on ongoing treatment or a highly structured setting. *Id.* The C2 criterion is satisfied with evidence of marginal adjustment, meaning a claimant has a "minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." *Id.*

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). An ALJ's reasoning

3

why a claimant "is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a . . . court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).

At step three of the sequential analysis, the ALJ found that Plaintiff's severe impairments of anxiety disorder, autism spectrum disorder, and ADHD singly and in combination did not meet or equal the criteria for listings 12.06 (anxiety and obsessive-compulsive disorders), 12.10 (autism spectrum disorder), and 12.11 (neurodevelopmental disorders). R. 23. After considering the paragraph B criteria for the listings, the ALJ analyzed the paragraph C criteria for listing 12.06 as follows:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence of exacerbations requiring significant medication adjustments or inpatient psychiatric hospitalizations. Further, the claimant is able to leave the house and go out on his own.

R. 24 (citing R. 52, 309).

Plaintiff contends that the above findings were insufficient for demonstrating that he did not meet the paragraph C criteria under listing 12.06. Specifically, Plaintiff argues that it was improper of the ALJ to consider medication adjustments or inpatient psychiatric hospitalizations because such factors are inapplicable to his primary impairments of anger issues, outbursts, and autism. According to Plaintiff, the ALJ further erred by finding without sufficient evidence that Plaintiff can leave the house and go out on his own. The Court finds that the ALJ did not err on these bases.

The Court appreciates Plaintiff's concern that medication adjustments or hospitalizations may not be relevant to exacerbations of autism or emotional dysregulation, but notes that the ALJ's paragraph C analysis was limited to listing 12.06, which pertains to anxiety and obsessive-compulsive disorders. Moreover, the other listings at issue in this case, 12.10 (autism spectrum disorder) and 12.11 (neurodevelopmental disorders), do not contain paragraph C criteria. To the extent Plaintiff contends that the ALJ's paragraph C analysis was not appropriately tailored to his impairments from anger issues, outbursts, and autism, the Court finds the objection misplaced.

The ALJ appropriately discussed listing 12.06 by name and offered a more than perfunctory analysis of the paragraph C criteria, consistent with the regulations. The regulations provide that marginal adjustment, referred to as the C2 criterion, may be evidenced by significant changes in medication or other treatment, hospitalizations, or an inability to function outside of a home or more restrictive setting. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00G. Here, the ALJ found that Plaintiff did not satisfy the C2 criterion under the listing because there was no evidence that changes in his life exacerbated his anxiety symptoms resulting in significant changes in medication or hospitalizations. The ALJ further found that the C2 criterion was not met based on Plaintiff's testimony that he was able to leave the house on his own.[2] While the ALJ did not explicitly discuss whether Plaintiff met the C1 criterion, his findings as to the C2 criterion were

---

[2] As to Plaintiff's argument that the ALJ did not have enough evidence to find that Plaintiff could leave the house on his own, the Court notes that this finding was based on crediting Plaintiff's own testimony and function report.

sufficient to determine that Plaintiff did not meet the paragraph C criteria under the listing, as he had to provide evidence that he satisfied both. Accordingly, the ALJ considered factors that were appropriate for the listing at issue and provided a more than perfunctory explanation.

The Court also finds that the ALJ did not err by failing to discuss evidence that Plaintiff contends supported the paragraph C criteria. As discussed above, Plaintiff's argument misses that the only relevant listing with paragraph C criteria in this case pertained to listing 12.06 (anxiety and obsessive-compulsive disorders). Moreover, Plaintiff does not argue that he should have been considered under a different listing. Accordingly, Plaintiff's reference to evidence related to his impairments from autism or emotional dysregulation, such as his history attending special education programs and behavioral issues necessitating therapy, do little to establish that he met the paragraph C criteria for listing 12.06.[3] Because Plaintiff did not meet his initial burden that he met all of the requirements under listing 12.06, the ALJ did not err by omitting this evidence from his paragraph C analysis. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (noting that a plaintiff bears the burden of establishing that all of the requirements of a listed impairment were met). The Court therefore finds that the ALJ's paragraph C analysis does not serve as a ground for remand.

## Subjective Symptom Analysis

Next, Plaintiff argues that the ALJ erred in analyzing his subjective symptoms. The Court notes however that Plaintiff does not specify which of his subjective symptoms were improperly analyzed, but rather objects to how the ALJ weighed the evidence and reached a finding of non-disability. As a threshold matter, Plaintiff has not properly presented this issue before the Court. Plaintiff's high-level argument leaves the Court to surmise which of his symptoms he believes were improperly assessed. Furthermore, to the extent Plaintiff argues that the evidence supported a different finding, this Court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the [ALJ]." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotations and citation omitted). Nevertheless, the Court finds that the ALJ properly assessed Plaintiff's subjective symptoms.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ must "determine whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan*

---

[3] The Court notes that much of the evidence Plaintiff contends were ignored were addressed by the ALJ. R. 25-26 (noting he did not use public transportation, attended a special education program, such as RAISE, and testified he needed a couple of reminders a day); R. 27 (noting issues with hygiene, previous history of outbursts requiring treatment, and a stressful incident with arranging transportation to Rock Valley College).

*v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished).

In this case, Plaintiff alleged disability due to ADHD, autism, sensory disorders, learning disorders, social phobias, and emotional disorders. R. 25. In his function report, Plaintiff stated that his symptoms included difficulty managing stress or changes in routine and maintaining concentration. R. 311. During the hearing, Plaintiff testified to needing reminders for self-grooming and completing tasks, as well as having difficulty tolerating certain food textures and clothing. R. 57-58. Plaintiff additionally testified that he may have had difficulty with social interactions in high school due to autism, although he could not specify how. R. 48. Subsequently, the ALJ found that the record established Plaintiff had anxiety disorder, autism spectrum disorder, and ADHD. R. 26.

The ALJ considered a combination of objective evidence, opinion evidence, Plaintiff's daily living activities, medication, and other treatment to assess his subjective symptoms. For example, in addressing Plaintiff's statements that he struggled to manage stress or changes in routine, the ALJ found at step three that Plaintiff had a moderate limitation in adapting or managing himself. R. 24. The ALJ later noted in his RFC discussion that it appeared Plaintiff was successfully learning to manage his anxiety and was able to adjust to the RAISE program at Rock Valley College. R. 26-27 (citing R. 512 (IEP noting Plaintiff had come a long way in managing his stressors), 653 (therapy notes reporting Plaintiff adjusted to Rock Valey College pretty fast and no longer felt anxious about college), 734 (therapy notes reporting Plaintiff was doing well in his spring semester)). The ALJ also cited objective testing from a consultative examination, in which Plaintiff was assessed with anxiety disorder. R. 29 (citing R. 720). In considering his treatment, the ALJ discussed Plaintiff's history of emotional dysregulation and that a stable course of medications improved the frequency and intensity of his outbursts without side effects. R. 27 (citing R. 703, 746). Finally, the ALJ considered a state agency opinion that found mild limitations in adapting or managing himself. However, the ALJ found the opinion inconsistent with Plaintiff's allegations that he had difficulties functioning at times, determining that a moderate limitation was more appropriate. R. 30. The ALJ accordingly included in the RFC that Plaintiff was to be exposed to no more than occasional changes in the work setting, could meet end of day goals but not hourly production goals, and make simple work-related decisions. R. 25, 31.

The ALJ also addressed Plaintiff's allegations that he had difficulty concentrating at times and needed reminders to complete tasks. At step three, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, noting both supporting and conflicting evidence. R. 24 (citing R. 327 (teacher noting slight problems with task completion), 462 (psychiatric evaluation noting he did not consistently put forth the best effort), 637-659 (therapy appointments noting intact attention and concentration)). In discussing his medications, the ALJ referenced Plaintiff's testimony that Ritalin helped him with concentration and therapy notes which reported that his ADHD had become stable after resuming medications after a shortage. R. 26-27 (citing R. 722, 730, 734). The ALJ also cited a consultative examination in which Plaintiff was assessed with ADHD as well as a state agency opinion that found he had moderate limitations in concentration, persistence, and pace. R. 29-30. Based on this evidence, the ALJ limited Plaintiff to simple, routine, and repetitive tasks. R. 31.

The ALJ also addressed Plaintiff's statements that he needed reminders for self-grooming, noting that he had some issues with maintaining personal hygiene in the past. R. 27 (citing R. 703). However, the ALJ found that other portions of the record indicated Plaintiff could manage his self-care, such as his own function report as well as observations made by his therapist and a consultative examiner. R. 27 (citing 307-08 (function report stating Plaintiff did not need reminders for hygiene), 637-46 (therapist's notes stating Plaintiff appeared well-groomed), 717 (consultative examination in which Plaintiff stated he can manage hygiene with occasional verbal reminders)).

Finally, the ALJ addressed Plaintiff's claims that he struggled with social anxiety. For example, at step three the ALJ found a moderate limitation in interacting with others, noting that he did not have issues spending time with familiar people but could get withdrawn in new situations until he became comfortable and could become more involved. R. 24 (citing 310, 326). Later in his RFC discussion, the ALJ referenced Plaintiff's testimony that his time with friends was primarily spent online and that he had prior communication issues with teachers and students but could not provide further detail. R. 26 (citing R. 48, 51). The ALJ also cited consultative examination notes in which Plaintiff was found with shy eye contact, hesitant but audible speech, appeared to be introverted, and lacked self-confidence. R. 29 (citing R. 719-20). Lastly, the ALJ discussed the opinion evidence, including a state agency finding that Plaintiff should be limited in interacting with the general public, and a questionnaire completed by Plaintiff's special education supervisor which indicated that he had some difficulty interacting and relating with others. R. 30. Based on these records and findings, the ALJ ultimately limited Plaintiff to frequent interaction with supervisors, occasional interaction with coworkers but no team tasks, and only incidental contact with the public. R. 31.

In summary, the ALJ properly followed the two-step analysis for subjective symptoms. The ALJ identified Plaintiff's impairments and then assessed the symptoms Plaintiff described, at times crediting his statements over the opinion evidence. In other words, the ALJ constructed an RFC that addressed Plaintiff's alleged symptoms to the extent they were supported by the record. Accordingly, the Court finds that the ALJ did not err in assessing Plaintiff's subjective symptoms because the decision provided specific reasons supported by the record, did not lack any explanation or support, and was not patently wrong.

**Incomplete Record**

Finally, Plaintiff alleges two errors with managing the record. First, Plaintiff argues that the consultative examiner and state agency opinions relied on incomplete evidence or at least appeared to misunderstand that he was in a special education therapeutic school.[4] Second, Plaintiff contends that the ALJ did not fulfill his duty to complete the record when he failed to include his file from a prior claim in which he was granted benefits. As an initial matter, while the Court

---

[4] Plaintiff's argument that the ALJ did not have enough evidence to find that he has a twelfth-grade education is undeveloped and therefore waived. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Moreover, Plaintiff does not specify how a potential error on this issue amounts to more than harmless error.

reviews whether an ALJ appropriately weighed the medical opinions, it does not assess the medical opinions themselves. Thus, it is not for the Court to determine whether the consultative examiner or state agency consultants had sufficient evidence to make their findings. *See Grotts*, 27 F.4th at 1278 (citation omitted) ("[W]e do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence.").

As to the prior claim file, the Court finds that Plaintiff waived his objection to the incomplete record during the hearing. At the hearing, Plaintiff's counsel confirmed that aside from some education records, the record was complete. R. 43. Subsequently, the ALJ informed counsel that he looked for Plaintiff's prior claim file but had "no idea" where it was. R. 46. Counsel acknowledged this information and proceeded with the hearing. *Id.* Although it is incumbent on the ALJ to develop the record, represented claimants are presumed to have made their best case before the ALJ. *Phelps v. Kijakazi*, No. 21-CV-184-JDP, 2023 WL 1433038, at *4 (W.D. Wis. Feb. 1, 2023) (citing *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (finding that the ALJ was reasonable to proceed on the record because counsel stated he had no objections to it). Here, counsel appeared to acquiesce and did not raise any objections to the evidentiary record after the ALJ put him on notice that a prior file existed but could not be located. In light of this waiver, the Court finds that Plaintiff is not entitled to remand on this ground.

**CONCLUSION**

For the foregoing reasons, the Court affirms the Commissioner's decision.

Date: July 23, 2026

ENTER:

_Margaret J. Schneider_
United States Magistrate Judge

8